IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAURN THOMAS,<br><br>Plaintiff,<br><br>-v.-<br><br>CITY OF PHILADELPHIA, MARTIN DEVLIN, PAUL WORRELL, and JAMES GIST,<br><br>Defendants. | Case No. 2:17-CV-04196-GEKP |

**PLAINTIFF'S SURREPLY TO DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendants' Reply Brief misconstrues controlling federal law, distorts and ignores evidence of record on liability, and presents a baseless challenge Plaintiff's expert on police practices. Plaintiff therefore submits this brief Surreply.

**A. There is sufficient evidence to establish the *Monell* claims**

***1. Dr. McCauley is qualified and the record supports his findings.***

In an effort to undermine the municipal liability claim, Defendants launch an ill-conceived broadside on the findings of Dr. R. Paul McCauley. Dr. McCauley's credentials are unassailable, as reflected in his Curriculum Vitae,[1] the many occasions over the past three decades when he has been qualified as an expert in state and federal courts, his years devoted to training law enforcement professionals, and his extensive scholarship in areas directly relevant to this case. Courts have consistently permitted criminal justice experts such as Dr. McCauley to

[1] Dr. McCauley's Curriculum Vitae is attached as Exhibit A.

testify in a wide variety of cases involving police and municipal practices, including allegations of a failure to train, supervise, or discipline officers.[2]

Defendants do not challenge Dr. McCauley's qualifications.[3] As detailed in the Plaintiff's Response to Defendants' Motion for Summary Judgment, Dr. McCauley's background and experience, and the voluminous materials reviewed by him, provide a more than adequate foundation for his expert opinions.

Efforts to challenge Dr. McCauley's findings in numerous other cases have failed. For example, in *McDaniels v. City of Philadelphia*, 234 F. Supp. 637, 646-647 (E.D. Pa. 2017), the Court found that the City's challenge to Dr. McCauley's findings—which parallel the defense arguments in this case—were "nothing more than a credibility attack that is inappropriate for

---

2 *See, e.g.*, *United States v. Perez*, 280 F.3d 318, 342 (3d Cir. 2002) (drug trafficking practices); *Vann v. City of New York*, 72 F.3d 1040, 1050-51 (2d Cir. 1995) (training and supervision of officers); *Thomas v. City of New Orleans*, 687 F.2d 80 (5th Cir. 1982) (code of silence). *See also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 105 (1985); *Larez v. City of Los Angeles*, 946 F.2d 630, 635 (9th Cir. 1991); *Parker v. D.C.*, 850 F.2d 708, 713 (D.C. Cir. 1988); *Voutour v. Vitale*, 761 F.2d 812, 822 (1st Cir. 1985); *Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 332 (2d Cir. 1986). There is a broad range of other subjects on which such testimony is appropriate. *See, e.g.*, *Kopf v. Skyrm*, 993 F.2d 374, 378-79 (4th Cir. 1993) (abuse of discretion to exclude proposed testimony on proper use of canines and slapjacks); *Young v. City of Killeen, Tex.*, 775 F.2d 1349, 1351 (5th Cir. 1985) (proper method to approach suspect); *Anthony v. Baker*, 767 F.2d 657, 665 (10th Cir. 1985) (appropriate investigative techniques); *Hild v. Bruner*, 496 F. Supp. 93, 98 (D.N.J. 1980) (psychological testing of police officers); *Thomas v. City of New Orleans*, 687 F.2d 80, 83 (5th Cir. 1982) (code of silence); *Bonsignore v. City of New York*, 521 F. Supp. 394, 400-01 (S.D.N.Y. 1981), aff'd, 683 F.2d 685 (2d Cir. 1982) (code of silence, city's system for identifying unstable officers).

3 The standard under Federal Rule of Evidence 702 is quite broad. *See Tuf Racing Prods., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000) (experts can be qualified even if not academics or scholars); *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 741 (3d Cir. 1994).

summary judgment." Indeed, there are many federal cases in which Dr. McCauley's expertise and conclusions on police practices were found reliable and admissible.[4]

Defendants cite to a single case, *Woloszyn v. County of Lawrence*, 396 F.3d 314 (3d Cir. 2005), to support their objections to Dr. McCauley's findings. In *Woloszyn*, however, the issue was limited to whether there was a sufficient evidentiary basis to support Dr. McCauley's findings in a prison suicide case, and the Third Circuit found only that the record was inadequate to support the opinion on the lack of training in suicide prevention. Here, as discussed below, the evidence of record fully supports Dr. McCauley's findings.

***2. There is evidence of widespread customs and policies.***

As detailed in Plaintiff's initial submission, from at least 1978 through well after Mr. Thomas's arrest, PPD officers, and the Homicide Unit in particular, engaged in patterns of misconduct—fabrication, coercion, and suppression of evidence—identical to the misconduct that led to Mr. Thomas's wrongful arrest and imprisonment. This evidence is not, as Defendants suggest, too "remote."[5] Rather, the record examined by Dr. McCauley shows a pervasive, ***ongoing*** pattern of misconduct from at least the 1970s through the 1990s and beyond. The

---

[4] *See Doswell v. City of Pittsburgh*, Civil Action No. 07-0761, 2009 WL 1734199, at *12-13 (W.D. Pa. June 16, 2009) (denying summary judgment on claim that the Pittsburgh Police Department failed to train and supervise its employees based in part on Dr. McCauley's opinion that the department's internal investigation practices were deficient); *Williams v. Twp. of W. Deptford*, Civil Action No. 05-1805, 2008 WL 1809134, at *11 (D.N.J. Apr. 22, 2008) (denying municipality's motion for summary judgment in part due to Dr. McCauley's opinion that police department's procedures for investigating complaints of excessive force were inadequate). *See also Surface v. Conklin*, 2018 WL 6257984 (S.D. Ohio Nov. 30, 2018); *Stokes v. Janosko*, 2018 WL 3361456 (W.D. Pa. July 10, 2018); *Devine v. Middletown Twp.*, 2016 WL 1728372 (E.D. Pa. Apr. 29, 2016); *Chatman v. City of Johnstown*, 2005 U.S. Dist. LEXIS 27769 (W.D. Pa. Nov. 14, 2005).

[5] In the authority cited by Defendants, *Watson v. Abington Township*, 478 F.3d 144, 156 (3d Cir. 2007), the analogous prior misconduct ended many years before the constitutional violation took place in that case.

continuing nature of the misconduct is critical as the same patterns persisted time and again in the years leading to Mr. Thomas's arrest and thereafter.

Defendants ignore this evidence and focus only on Dr. McCauley's analysis of eight other homicide cases, arguing that this evidence is inadequate to show widespread misconduct. To the contrary, the eight homicide cases arose in the same time frame, involved the defendant officers and others with whom they closely worked, and show striking similarities to this case. Defendants' effort to minimize the significance of the eight cases is surprising given the City's efforts to restrict access to other Homicide Files for analysis in *Anthony Wright v. City of Philadelphia, et al.*, E.D. Pa. No. 16-5020. The files secured in *Wright* were ultimately provided in discovery in this case. And Defendants fail to acknowledge that three of the eight convictions have been reversed and three are currently under review by the District Attorney's Conviction Integrity Unit. *See* Dep. of Andrew Wellbrock, Ex. 57 to Plaintiff's Memorandum in Opposition to Motion for Summary Judgment ("Plaintiff's Opposition"), at 13-14, 69.

Defendants also disregard Dr. McCauley's analysis of more than 1,000 IAD investigations, numerous class actions in federal court related to investigatory abuses by PPD officers in the period immediately prior to Mr. Thomas's arrest, governmental data, and the findings of PPD, City, and DOJ officials.[6] Defendants trivialize the deposition testimony Captain Francis Healey, Special Legal Advisor to the Police Commissioner, whose knowledge of PPD operations is peerless, and Detective Dusak, who was a codefendant of Devlin and Worrell in the *Anthony Wright* litigation. In similar fashion, Defendants focus on limited points made by

[6] *See* Plaintiff's Opposition at 23-25, 45-59.

Inspector Nodiff, and ignore his concessions regarding the training deficiencies discussed in Dr. McCauley's report.[7]

Defendants ignore extensive evidence on the lack of proper training and supervision,[8] and persist in arguing that the record does not support a *Monell* claim. Among the evidence disregarded by Defendants are admissions by the defendant officers that they had never received training on the importance, when seeking an arrest warrant, of including evidence that negates probable cause. Indeed, at his deposition Detective Worrell made plain that he had not been trained to include "exculpatory information in an affidavit for a warrant," and that he includes only what he "believes to be the truth."[9] Detective Devlin confirmed that he was taught not to include exculpatory facts or evidence that the witness who was used to establish probable cause had lied.[10] Thus, subjective opinions contradicted by available evidence—and not objectively reasonable facts—were the guidepost for determining the existence of probable cause.

The failure to properly train, supervise, and discipline led Detectives Devlin and Worrell to believe that it was entirely proper to employ unlawful interrogation techniques, suppress material facts, and exclude evidence negating probable cause from arrest warrant affidavits.[11] Prevailing customs, policies, and practices in the PPD caused the arrest and prosecution of Shaurn Thomas and other demonstrably innocent men.

---

7 *See* Dr. McCauley's Report, Ex. 126 to Plaintiff's Opposition, at 17-18.

8 *See* Plaintiff's Opposition at 16-20, 46-59.

9 *See* Exhibit 21 to Plaintiff's Opposition at 52-53.

10 *See* Exhibit 20 to Plaintiff's Opposition at 222-223.

11 Defendants cite *Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007), to support the argument that there is insufficient evidence to support a claim of failure to train. In this case, unlike *Blankenhorn*, the evidence of the City's deliberate indifference to the need for proper training and supervision far exceeds "the failure to train one officer." *Id*. at 484.

Finally, Defendants are plainly wrong with respect to the legal standard, suggesting that *City of Canton* requires a plaintiff produce overwhelming evidence of police misconduct. As we have already made clear, *Monell* claims may be established by custom or practice and may even be shown by a single incident, and certainly by considerably less evidence of widespread misconduct than has been shown in this case.[12]

**3. *Constructive knowledge of City policymakers.***

Defendants make several untenable arguments. First, that Plaintiff cannot prove a *Monell* claim without evidence that specific, named policymakers had knowledge of prior patterns of misconduct before Mr. Thomas's arrest. The Third Circuit has made clear that a plaintiff need only show constructive knowledge of policymakers, and that a specific policymaker need not be identified. *See Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996); *Olivieri v. Cnty. of Bucks*, 502 F. App'x 184, 190 (3d Cir. 2012); *Washington-Pope v. City of Philadelphia*, Civil Action No. 12-4300, 2015 WL 7450522, at *15 (E.D. Pa. Nov. 24, 2015).[13]

Second, Defendants' reliance on *Montgomery v. DeSimone*, 159 F.3d 120 (3d Cir. 1998), is off the mark. In *DeSimone*, the Court did not, as Defendants suggest, require that a plaintiff prove that a supervisor affirmatively approved of unlawful police practices. Rather, the Court found that "a failure to train, discipline or control can only form the basis for Section 1983

---

12 *See* Plaintiff's Opposition at 45-46, 56-60, 66-69, and Dr. McCauley's Report (Ex. 126 to Plaintiff's Opposition). An officer's misconduct during an incident, and the failure to investigate and discipline, may give rise to a *Monell* claim even in the absence of prior incidents of a similar nature. *Grandstaff v. Borger*, 767 F.2d 161, 171 (5th Cir. 1985).

13 Defendants misconstrue *McTernan v. City of York*, 564 F.3d 636 (3d Cir. 2009), *Andrews v. City of Philadelphia*, 895 F.2d 1469 (3d Cir. 1990), and *Rees v. Office of Children and Youth*, 474 F. App'x 139 (3d Cir. 2012), to support their argument that a plaintiff must identify specific policymakers. That is not Third Circuit law.

municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's action or inaction could be found to have communicated a message of approval to the offending subordinate." *Id*. at 127. This Court made a similar finding in *Bell v. Connor*, No. 12-2625, 2014 WL 6606410, at *5-*6 (E.D. Pa. Nov. 20, 2014). Thus, a supervisor's inaction may lead to the inference that he or she had approved a subordinate's transgression, but there is no affirmative requirement of supervisory approval.

Third, Defendants claim that *Hernandez v. Borough of Palisades Park*, 58 F. App'x 909 (3d Cir. 2003), mandates that a *Monell* claim may only be proven by evidence of numerous prior constitutional violations. In fact, while *Hernandez* states that "[g]enerally . . . known prior constitutional violations" are often relied upon, *id*. at 913, other types of evidence, including prior and subsequently incidents that are similar to the misconduct in question, may support a finding of municipal liability.[14]

On the issue of the City's dysfunctional disciplinary system, Defendants miss the point in arguing that Detectives Devlin and Worrell had not accumulated a large number of citizen complaints prior to Mr. Thomas's arrest. First, the detectives did have a total of five misconduct complaints filed against them, four of which arose before Mr. Thomas's arrest. Consistent with Dr. McCauley's finding that citizen complaints were not properly investigated and acted upon, not one of these complaints was sustained. Second, Dr. McCauley found that the PPD disciplinary system was, in the period before and long after Mr. Thomas's arrest, fundamentally flawed in numerous respects, including the failure to have an effective process in place to

---

14 *See Estate of Roman v. City of Newark*, 914 F.3d 789, 799 (3d Cir. 2019); *Bordanaro*, 871 F.2d at 1167; *Grandstaff*, 767 F.2d at 171.

facilitate the filing of complaints, and that victims of misconduct were often deterred from even making complaints.[15]

Dr. McCauley provided a fully informed opinion that the defendant officers had reason to believe that they could commit constitutional violations without fear of adverse consequences. The evidence demonstrates the City's deliberate indifference to the need to properly train, supervise, and discipline officers in light of known constitutional violations. While Defendants are free to argue to the jury that City policymakers just did not know what was going on under their collective noses, there are no grounds to support summary judgment.

**B. The remaining arguments in Defendants' reply brief are misplaced or incorrect.**

First, Plaintiff agrees that a determination of probable cause must be based on the "totality of the circumstances." Otherwise, how could a plaintiff prove what was omitted from the affidavit of probable cause or recklessly misrepresented as opposed to the police officer cherry-picking the facts and deliberately omitting exculpatory facts, as the Defendants did here? However, the "totality of circumstances" does not permit the Defendants to reconstruct the affidavit to include information that purportedly bolster their claim of "probable cause" after the fact. As the Third Circuit made clear in *Dempsey v. Bucknell University*, 834 F.3d 457, 470 (3d Cir. 2016), "the district court must identify any improperly asserted or omitted facts, and if it determines there were reckless misrepresentations or omissions, 'excise the offending inaccuracies and insert the facts recklessly omitted' from the affidavit and assess whether the reconstructed affidavit would establish probable case." *Id.* (quoting *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000)). *Dempsey* did not say anything about giving defendants a "second bite at the apple" to establish probable cause.

---

15 *See* Dr. McCauley's Report, Ex. 126 to Plaintiff's Opposition at 11-12.

Second, Defendants' novel argument that *Heck v. Humphrey* requires this Court to instruct the jury that it must accept the "fact" that the Stallworths were involved in the Martinez murder has no basis in law, and Defendants do not cite any case where such an instruction was given. Moreover, it is up to the jury to decide the Stallworths' credibility.

Finally, Defendants argue Plaintiff has tried to circumvent this Court's earlier ruling dismissing the Plaintiff's claim that the Defendants withheld exculpatory evidence in violation of *Brady*. Defendants' Reply at 12-14. The Defendants have misunderstood Plaintiff's reference to *Haley v. City of Boston*, 657 F.3d 39 (1st Cir. 2011). As Plaintiff noted: "Dr. McCauley's global analysis of the PPD found that the customs and practices related to the fabrication and concealment of evidence in this case were widespread . . . ." Pl.'s Oppn. at 46. Plaintiff's claims for conspiracy to violate his constitutional rights and for fabrication of evidence encompass all the deliberate and reckless conduct of the Defendants, including the coerced confessions, failure to evaluate the credibility of the Stallworths' claims, ignoring the documents in the homicide file showing that Shaurn Thomas was at the YSC on the morning of November 13 (and failing to follow up on these findings), and deliberately concealing evidence that would have revealed other suspects and directly contradicting the Stallworths' version of events.

**CONCLUSION**

For all the reasons stated above and in Plaintiff's Opposition to Defendants' Motion for Summary Judgment and the Plaintiff's Counterstatement of Material Facts, Plaintiff respectfully requests that the Court deny Defendants' Motion for Summary Judgment.

Respectfully submitted,

Dated: May 9, 2019

*/s/ Stephen D. Brown*

Stephen D. Brown
James Figorski
Tiffany Engsell
Stefanie A. Tubbs
**DECHERT LLP**
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000

Paul Messing
**KAIRYS, RUDOVSKY, MESSING, FEINBERG, LIN**
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400

*Attorneys for Plaintiff Shaurn Thomas*

**CERTIFICATE OF SERVICE**

I, Stefanie A. Tubbs, hereby certify that on Thursday, May 9, 2019, the foregoing Surreply to Defendants' Reply in Support of their Motion for Summary Judgment was served on Defendants City of Philadelphia, Martin Devlin, and Paul Worrell via this Court's Electronic Case Filing System.

Dated: May 9, 2019

*/s/ Stefanie A. Tubbs*
Stefanie A. Tubbs