IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHAURN THOMAS, : | |
| Plaintiff, : | |
| : | Civil Action |
| v. : | No. 17-4196 |
| : | |
| CITY OF PHILADELPHIA, et al., : | |
| Defendants. : | |

## LIST OF *MONELL* WITNESSES

**James Dennis Witnesses**

James Dennis killed Chedell Williams and then pled no contest to murdering her. Plaintiff's expert, Dr. McCauley, has opined that the Philadelphia Police Department committed misconduct in investigating Chedell's murder. *See* Docket No. 87 at page 14. Dr. McCauley also has opined that the investigation was part of a "clear pattern of PPD investigatory/operational and management misconduct." *Id.* at page 17. There is no evidence that Detectives Devlin and Worrell were involved in this investigation, so Plaintiff's evidence about Mr. Dennis can only be offered for purposes of his *Monell* claim against the City. If the Court does not grant the motion to bifurcate, the City will call the following witnesses:

1) Zahra Howard. Ms. Howard witnessed James Dennis murder Chedell Williams, and continues to maintain that he committed the murder. *See* Exhibit M, Affidavit of Zahra Howard. She will testify as to her interactions with Philadelphia police officers during the investigation, and will rebut Plaintiff's contention that officers "coerced statements" during the investigation. *See id.* at page 14.
2) James Cameron. Mr. Cameron witnessed James Dennis murder Chedell Williams, and continues to maintain that he committed the murder. *See* Exhibit N, Affidavit of James Cameron. He will testify as to his interactions with Philadelphia police officers during the investigation, and will rebut Plaintiff's contention that officers "coerced statements" during the investigation. *See id.*
3) Gerald Robison. Detective Robison interviewed various witnesses during the Dennis investigation, including Muhammad Abdul, James Massey, and Stephon Veney, witnesses who provided inculpatory information as to Mr. Dennis. He will testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct.

1

4) <u>Bennie Bracey</u>.  Detective Bracey interviewed various witnesses during the Dennis investigation, including James Cameron and Thomas Bertha, who testified at trial that Mr. Dennis murdered Chedell Williams.  Detective Bracey will testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct.
5) <u>Richard Reinhold</u>.  Detective Reinhold interviewed various witnesses during the Dennis investigation, including Daniel Burch, a witness who provided inculpatory information as to Mr. Dennis.  He will testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct.
6) <u>Thomas Perks</u>.  Detective Perks interviewed various witnesses during the Dennis investigation, including James Leach, who provided inculpatory information as to Mr. Dennis.  Detective Perks and Detective Frank Jastrzembski interviewed Marc Echols, who provided inculpatory information as to Mr. Dennis.  Detective Perks will testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct.
7) <u>Art Mee</u>.  Detective Mee interviewed various witnesses during the Dennis investigation, including Alfred Green, who provided inculpatory information as to Mr. Dennis.  Detective Mee will testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct.
8) <u>Bill Danks</u>.  Detective Danks interviewed various witnesses during the Dennis investigation, including Zahra Howard, who testified at trial that she saw Mr. Dennis murder Chedell Williams.  Detective Danks will testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct.
9) <u>James Corbett, Badge No. 9156</u>.  Detective Corbett interviewed various witnesses during the Dennis investigation, including James Massey, who provided inculpatory information as to Mr. Dennis.  Detective Corbett will testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct.
10) <u>William Wynn</u>.  Detective Wynn oversaw lineups at which Thomas Bertha, James Cameron, and Zahra Howard separately and independently identified Mr. Dennis as Ms. Williams's murderer.  He will testify as to the contention of Plaintiff's expert that the police officers "coerced statements," during the investigation, *see id.*, as well as whether he committed, witnessed, or was pressured to commit any misconduct during the investigation.

**Andrew Swainson Witnesses**

Andrew Swainson killed Stanley Opher in 1988 and remains convicted of murdering Mr. Opher. Plaintiff's expert has opined that the Philadelphia Police Department committed misconduct in investigating Mr. Opher's murder. *See* Docket No. 87 at page 16. Dr. McCauley also has opined that the investigation was part of a "clear pattern of PPD investigatory/operational and management misconduct." *Id.* at page 17. There is no evidence that Detectives Devlin and Worrell were involved in this investigation, so Plaintiff's evidence about Mr. Swainson can only be offered for purposes of his *Monell* claim against the City. If the Court does not grant the motion to bifurcate, the City will call the following witnesses:

11) Jacqueline Morsell. Ms. Morsell testified against Mr. Swainson, stating that he collected drug money from Mr. Opher, told her that the murder "wasn't supposed to happen like that," and pressured her to not testify. She also linked Mr. Swainson to a shotgun found near the murder scene. She will testify as to her interactions with Philadelphia police officers during the investigation, and will rebut Plaintiff's contention that officers "fabricated evidence against Mr. Swainson," as well as the (false) contention of Plaintiff's expert that Paul Presley was the only witness who linked Mr. Swainson to the murder. *See id.* at page 16; Exhibit O, Affidavit of Jacqueline Morsell.
12) John Peterson. Detective Peterson interviewed Paul Presley, who testified at trial that Mr. Swianson committed the murder. Detective Peterson will testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct.
13) James Alexander, Badge No. 9147. Detective Alexander interrogated Mr. Swainson. He will testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct.
14) Arthur Durrant, Badge No. 415. Lieutenant Durrant interviewed Edrick Hume, who provided inculpatory information as to Mr. Swainson. Lieutenant Durrant will testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct.
15) Joseph D. Fischer, Badge No. 9205. Detective Fischer interviewed Crystal Justice, who provided inculpatory information as to Mr. Swainson. Detective Fischer will testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct.

**Percy St. George Witnesses**

Percy St. George is a convicted kidnapper who was investigated for murdering Japelle McCray. Plaintiff's expert has opined that the Philadelphia Police Department committed misconduct in investigating Mr. St. George. *See* Docket No. 87 at pages 14-15. Dr. McCauley also has opined that the investigation was part of a "clear pattern of PPD investigatory/operational and management misconduct." *Id.* at page 17. There is no evidence that Detectives Devlin and Worrell were involved in this investigation, so Plaintiff's evidence about Mr. St. George can only be offered for purposes of his *Monell* claim against the City. If the Court does not grant the motion to bifurcate, the City will call the following witnesses:

16) Timothy McCairns, Badge No. 8009. Detective McCairns interviewed Melvin McCray, who provided inculpatory information as to Mr. St. George. Plaintiff's expert has stated that detectives "coerced false statements" against Mr. St. George, and Detective McCairns will rebut this testimony. *See id.* at page 14. Detective McCairns will testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct.
17) Detective Ken Brown, Badge No. 8010. Detective Brown interviewed David Glenn, who provided inculpatory information as to Mr. St. George. Plaintiff's expert has stated that detectives "coerced false statements" against Mr. St. George, and Detective Brown will rebut this testimony. *See id.* at page 14. Detective Brown will testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct.

Additionally, Detective Mee, listed above with respect to the Dennis investigation, will also have to testify about this investigation if the Court declines to bifurcate the *Monell* claim, because Detective Mee took a separate statement from Melvin McCray that inculpated Mr. St. George.

**Internal Affairs Witness**

18) If the Court denies bifurcation, the City of Philadelphia will call a witness who can testify as to the number and types of Internal Affairs complaints that were filed against Detectives Devlin and Worrell. Since such testimony is only relevant to Plaintiff's claim that the City failed to supervise and discipline its detectives, the City would only elicit it if the *Monell* claim is tried together with the underlying claim.

**Jack Combs Witnesses**

Jack Combs killed Roy Sheppard in February 1990 and remains convicted of murdering Mr. Sheppard (and of committing a separate murder). Although Detective Devlin was involved in the murder investigation, there is no evidence that he ever interviewed Mr. Combs. Plaintiff thus cannot use the Combs case as Rule 404(b) evidence of Detective Devlin's alleged "modus operandi" regarding confessions, and the Defendants will file a motion in limine to preclude him from calling any civilians involved in the Combs case as Rule 404(b) witness.

However, Plaintiff's expert has opined that the Philadelphia Police Department committed misconduct in investigating Mr. Sheppard's murder. *See* Docket No. 17 at page 17. Dr. McCauley also has opined that the investigation was part of a "clear pattern of PPD investigatory/operational and management misconduct." *Id.* Therefore, unless the Court grants the pending motion to bifurcate, the City will have to call the following witnesses:

19) Patricia Brennan. Detective Brennan interviewed Quiana Mosley, who identified Combs as Sheppard's murderer. Detective Brennan will testify as to whether she or any other officer committed misconduct during the investigation, as well as whether any other officer pressured her to commit misconduct.
20) James Ferguson. Lieutenant Ferguson spoke with Robert Berrien, who identified Combs as the murderer. Lieutenant Ferguson will testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct.
21) David Clark. Detective Clark interviewed Aitya Nelson and Robert Berrien, both of whom identified Combs as the murderer. Detective Clark will testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct.

Additionally, Joe LeBar, who may testify in the underlying case, will have to provide additional testimony if the Court declines bifurcation, because Ms. Nelson told him that Mr. Combs committed the murder.

**Carlos Hernandez Witnesses**

Carlos Hernandez killed Jose Figueroa and remains convicted of murdering Mr. Figueroa. Mr. Hernandez confessed to Detectives Devlin and Worrell, but Plaintiff cannot call him as a Rule 404(b) witness as to the Detectives' supposed "modus operandi" of obtaining confessions for multiple reasons, including that: (i) Mr. Hernandez is dead; and (ii) issue preclusion bars such a gambit, since a state court previously decided that Mr. Hernandez's confession was "freely and voluntarily given." *See* Exhibit C, Motion to Suppress Decision, at page 4; *see also* Exhibit A, August 8, 1991, Motion to Suppress Testimony; Exhibit B, August 12, 1991, Motion to Suppress Testimony. Moreover, since there is no evidence that the Detectives interrogated anyone else involved in the Hernandez case, the Defendants will file a motion in limine barring Plaintiff from calling anyone related to the case – including Ed Williams – as Rule 404(b) witnesses.

However, Plaintiff's expert has opined that the Philadelphia Police Department committed misconduct in investigating Mr. Figueroa's murder. *See* Docket No. 87 at pages 16-17. Dr. McCauley also has opined that the investigation was part of a "clear pattern of PPD investigatory/operational and management misconduct." *Id.* at page 17. Therefore, unless the Court grants the pending motion to bifurcate, the City will have to call the following witness.

22) <u>John Rechner</u>. Detective Rechner interviewed Juan Sanchez, who provided inculpatory information as to Mr. Hernandez. Detective Rechner will testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct.

**Willie Veasy Witnesses**

Willie Veasy killed John Lewis in 1992 and remains convicted of murdering Mr. Lewis. Mr. Veasy confessed to Detectives Devlin and Worrell, but Plaintiff cannot call him as a Rule 404(b) witness as to the Detectives' supposed "modus operandi" of obtaining confessions for multiple reasons, including that issue preclusion bars such a gambit, since a state court previously decided that Mr. Veasy's confession was "freely and voluntarily given." *See* Docket No. 75-1 at ¶ 37; *see also* Exhibit D, February 3, 1993, Motion to Suppress Testimony.

However, Plaintiff's expert has opined that the Philadelphia Police Department committed misconduct in investigating Mr. Lewis's murder. *See* Docket No. 87 at pages 15-16. Dr. McCauley also has opined that the investigation was part of a "clear pattern of PPD investigatory/operational and management misconduct." *Id.* at page 17. Therefore, unless the Court grants the pending motion to bifurcate, the City will have to call the following witnesses.

23) Denise Mitchell. Ms. Mitchell witnessed Willie Veasy murder John Lewis, and continues to maintain that he committed the murder. She will testify as to her interactions with Philadelphia police officers during the investigation and whether they committed any misconduct. *See* Exhibit P, Affidavit of Denise Mitchell.

Furthermore, Detective Edward Rocks is a witness in the underlying case, but if the Court declines to bifurcate then he will have to offer additional testimony related to Plaintiff's *Monell* claim. Detective Rocks interacted with Mr. Veasy after Mr. Veasy confessed. Detective Rocks can testify as to Mr. Veasy's post-confession appearance and behavior, given Dr. McCauley's opinion that the investigation involved "improper interrogations." *Id.* at page 16. He will also testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct.

Likewise, Detective Dominic Mangoni is a witness in the underlying case, but if the Court declines to bifurcate then he will have to offer additional testimony related to Plaintiff's *Monell* claim. Detective Mangoni took a statement from Ms. Mitchell in which she identified Mr. Veasy as the murderer. He will testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct.

**Walter Ogrod Witnesses**

Walter Ogrod killed four-year old Barbara Jean Horn in 1988 and remains convicted of murdering Barbara Jean.  Mr. Ogrod confessed to Detectives Devlin and Worrell, but Plaintiff cannot call him as a Rule 404(b) witness as to the Detectives' supposed "modus operandi" of obtaining confessions for multiple reasons, including that issue preclusion bars such a gambit, since a state court previously decided that it was "patently clear" that the confession was not coerced.  *See* Docket No. 75-1 at ¶ 40; *see also* Exhibit E, September 7, 1993, Motion to Suppress Testimony; Exhibit F, September 8, 1993, Motion to Suppress Testimony; Exhibit G, September 22, 1993, Motion to Suppress Testimony.

However, Plaintiff's expert has opined that the Philadelphia Police Department committed misconduct in investigating Barbara Jean's murder.  *See* Docket No. 87 at page 15.  Dr. McCauley also has opined that the investigation was part of a "clear pattern of PPD investigatory/operational and management misconduct."  *Id.* at page 17.  Therefore, unless the Court grants the pending motion to bifurcate, the City will have to call the following witnesses.

24) Joe Casey.  Mr. Casey interacted with Mr. Ogrod shortly after Ogrod's confession.  He will testify as to Mr. Ogrod's post-confession appearance and behavior.
25) John Megill.  Mr. Megill provided inculpatory information to Detective Worrell as to Ogrod's pedophilic tendencies.  He will testify as to his interactions with Philadelphia police officers during the investigation and whether they committed any misconduct.  *See* Exhibit Q, Affidavit of John Megill.
26) Ingrid Green.  Ms. Green informed police that, at the time of the murder when she was 13 years old, Ogrod peeped into her bedroom, asked her to show him her breasts, uncovered his rear in front of her, rifled through her drawers, and showed her little brother porn.  She will testify as to her interactions with Philadelphia police officers during the investigation and whether they committed any misconduct.
27) Charlie Green.  Mr. Green provided inculpatory information to Detective Devlin, telling him that Ogrod showed him pornography, talked to him about masturbation, and showed him masturbation oil that he used.  He will testify as to his interactions with Philadelphia police officers during the investigation and whether they committed any misconduct.
28) John Fahy.  Mr. Fahy was interviewed by multiple police officers during the investigation.  He will testify as to his interactions with Philadelphia police officers during the investigation and whether they committed any misconduct.

**Anthony Wright Witnesses**

Plaintiff has stated that he will call Anthony Wright as a Rule 404(b) witness in this case. The Court should reject this gambit for multiple reasons, including that Mr. Wright has never identified Detective Devlin as the person who coerced his confession. *See, e.g.*, Exhibit H, June 3, 1993 Trial Testimony of Anthony Wright, at 157:9-11 (Mr. Wright admitting that he does not know who Detective Devlin is). Plaintiff's claim that Mr. Wright will testify that Detective Devlin "physically abused and threatened him," *see* Exhibit L at ¶ 26, thus misrepresents the actual evidence from Mr. Wright's case.

However, Plaintiff's expert has opined that the Philadelphia Police Department committed misconduct in investigating Mr. Wright's case. *See* Docket No. 87 at pages 13-14. Dr. McCauley also has opined that the investigation was part of a "clear pattern of PPD investigatory/operational and management misconduct." *Id.* at page 17. Therefore, unless the Court grants the pending motion to bifurcate, the City will have to call the following witnesses:

29) William McDowell. Officer McDowell obtained inculpatory information during the investigation against Anthony Wright. He will testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct. Officer McDowell is not the same officer as the person listed in Plaintiff's witness list.
30) Maxwell Brill. Officer Brill obtained inculpatory information during the investigation against Anthony Wright. He will testify as to whether he or any other officer committed misconduct during the investigation, as well as whether any other officer pressured him to commit misconduct.

Additionally, Plaintiff has stated that he will call:

31) Anthony Wright.
32) Peter Neufeld, Mr. Wright's counsel, who did not live in Philadelphia in 1991, has no firsthand knowledge of the 1991 police investigation, and is presumably being listed to testify about DNA evidence from Mr. Wright's case and other irrelevant matters.
33) If Mr. Neufeld is permitted to testify about DNA evidence, the Defendants will call Phyllis Ward, Ms. Talley's niece, who will testify about the clothing that her aunt owned and wore.
34) If Mr. Neufeld is permitted to testify about DNA evidence, the Defendants will call Officer John Taggart, who will testify about recovering a hair from Mr. Wright's sweatshirt.
35) If Mr. Neufeld is permitted to testify about DNA evidence, the Defendants will call Sapana Prajapati, a forensic DNA scientist who will testify about the work of Mr. Neufeld's expert.
36) If Mr. Neufeld is permitted to testify about DNA evidence, the Defendants will call Adrienne Borges, a DNA expert who conducted testing regarding Mr. Wright's case.

37) If Mr. Neufeld is permitted to testify about DNA evidence, the Defendants will call <u>Jamie Haas</u>, a DNA expert who conducted testing regarding Mr. Wright's case.

**Witness for Underlying Case**

Most of the Defendants' witnesses for the underlying case – Detective Devlin, Detective Worrell, Detective Dougherty, Inspector Nodiff, Brian Coen, Bruce Berger, and Randy Williams – are also included in Plaintiff's witness list.  *See* Docket No. 112-13.  The Defendants thus intend to only call seven additional witnesses in their underlying case.

- Detective Dominic Mangoni.  Mr. Mangoni interviewed Nathaniel Stallworth, who inculpated Plaintiff in the murder of Domingo Martinez.
- Detective Jeff Piree.  Mr. Piree investigated Plaintiff for the murder of Harry James, an investigation that buttressed the existence of probable cause for Plaintiff's arrest in this case.
- Detective Edward Rocks.  Mr. Rocks investigated Mustafa Thomas for the murder of Harvey Bryant, an investigation that buttressed the existence of probable cause for Plaintiff's arrest in this case.
- Theresa Battle or Beverly Wilson.  One of these individuals will briefly testify as to the actual time Plaintiff was arrested for stealing a motorcycle, a time that Plaintiff has previously falsified under oath in an attempt to create an alibi.
- Doris Williams.  Ms. Williams will briefly testify that she would have interviewed Plaintiff at the Youth Study Center in the early afternoon, giving him ample time to come to the YSC after murdering Mr. Martinez.
- David Quain.  Mr. Quain will briefly testify about Medical Examiner's records related to the murder of Domingo Martinez.[1]
- Police Officers Roach and Bembischew, one of whom may briefly testify about how police homicide files are/were stored.

The last four witnesses in this list should each testify for less than 20 minutes.

---

[1] If the Court denies the pending motion at Docket No. 106, the Defendants may call Joseph LaBar and/or Ed Cameron to briefly testify about how the Philadelphia District Attorney's Office provided exculpatory materials to defense counsel.  Likewise, if the Court denies the pending motion at Docket No. 107, the Defendants may call Mark Gilson.

12